IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **NADER MODANLO,** | * | |
| Appellant, | * | |
| v. | * | Case No.: PWG-17-2544 |
| **CHERYL E. ROSE,** | * | |
| Appellee. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Appellant Nader Modanlo is an Iranian-American former aerospace executive with a lengthy history as a participant in federal legal proceedings, both as a debtor and as a convicted white-collar criminal. *See generally United States v. Modanlo*, 762 F.3d 403 (4th Cir. 2014). This appeal marks the culmination of a 16-year-long Chapter 7 bankruptcy case involving one of his companies, Final Analysis, Inc. ("FAI"). *See In re Final Analysis, Inc.*, Bankr. Case No. 01-20139 TJC.

Modanlo brought this appeal in September 2017, seeking to challenge a bankruptcy court order approving attorney's fees for the law firm representing the trustee as special counsel. I dismissed the appeal in a July 2, 2018 memorandum opinion and order, holding that Modanlo had waived his right to contest the firm's application for compensation. *See* July 2018 Mem. Op., ECF No. 30. Modanlo now seeks to alter or amend the Court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See* ECF Nos. 34, 35.

Modanlo has not identified a "clear error of law" in the prior judgment. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010). His motion, accordingly, will be denied.

## FACTUAL BACKGROUND

The FAI bankruptcy case stretches back to September 2001, when the company's creditors filed an involuntary petition against it under Chapter 7 of the Bankruptcy Code. *See In re Final Analysis, Inc.*, 389 B.R. 449, 451 (Bankr. D. Md. 2008). Soon after the case commenced, the Chapter 7 trustee, Cheryl Rose, asked the bankruptcy court for authorization to hire attorney James M. Hoffman as special counsel to oversee the "extensive legal services" the case would require.[1] ECF No. 34-1. Rose sought to place Hoffman under a general retainer, explaining his responsibilities would include: (1) representing the trustee in suits relating to the bankruptcy case; (2) investigating and prosecuting potential fraudulent conveyance actions or other avoidance actions; (3) assisting in the preparation of pleadings, motions, and other filings required to administer the estate; and (4) advising the trustee in connection with the liquidation of estate property. *See id.* ¶ 3. The court approved the request. *See* December 2001 Order, ECF No. 34-2.

Section 330(a) of the Bankruptcy Code authorizes a bankruptcy court to award special counsel and other professionals "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). In the years that

---

[1] Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

followed, Hoffman and his then firm, Shulman, Rogers, Gandal, Pordy and Ecker, P.A. ("Shulman Rogers"), applied for and received compensation for their services under this provision seven times. *See* ECF No. 4, Exs. 1, 6, 14, 37, 43, 49, 55. Hoffman would later file four more requests for compensation, but by then he was no longer affiliated with Shulman Rogers. One of those applications, approved in January 2010, sought compensation for his work while a principal at Goren, Wolff, Orenstein and Hoffman, LLC. *See* ECF No. 4, Exs. 68, 72. Three others were approved while he was affiliated with another law firm, Offit Kurman, P.A. *See* ECF No. 4, Exs. 74, 78, 79, 83; ECF No. 3, Exs. 42, 50.

This appeal concerns the last of Hoffman's applications. In that filing, dated July 13, 2017, Hoffman asked the bankruptcy court to authorize the trustee to pay $43,713.50 in compensation to Offit Kurman, plus a $7,366.40 fee enhancement. *See* Offit Kurman Final Appl., ECF No. 3, Ex. 50. Modanlo objected to the request, arguing that the special counsel's time entries were lacking detail and that some of the special counsel's work was not compensable. *See* ECF No. 3, Ex. 47. Rose, the trustee, sought to strike Modanlo's response in opposition to the application, asserting Mondolo had filed it "for the improper purpose of harassing [Offit Kurman and] causing needless expense to the Trustee." Mot. to Strike ¶ 7, ECF No. 3, Ex. 48. The trustee's motion argued Modanlo had "waived his right to object to administrative expenses of the professionals" in 2004, when he and Rose entered into a settlement agreement to resolve their various disputes in connection with the bankruptcy case.[2] *Id.* ¶ 8.

The bankruptcy court agreed. *See* Final Order, ECF No. 3, Ex. 50. In an August 2017 order granting Hoffman's application, the court stated Modanlo had "no right to object" to the

---

[2] The bankruptcy court approved the agreement on October 5, 2004. ECF No. 25-1.

3

application, as he had "contractually bargained away his right to object to the compensation of professionals as a creditor in this case." *Id.*

Modanlo appealed the bankruptcy court's order.[3] *See* ECF No. 1. On July 2, 2018, I granted Offit Kurman's motion to dismiss the appeal, concluding that Modanlo had indeed waived his right to challenge the special counsel's application. July 2018 Mem. Op., ECF No. 30. Modanlo has since filed a motion for reconsideration, ECF No. 34. That motion has been fully briefed. *See* ECF Nos. 34, 35, 36, 37. No hearing is necessary. *See* Fed. R. Bankr. P. 8019(b)(3); Loc. R. 105.6.

## STANDARD OF REVIEW

A district court "sits as an appellate tribunal in bankruptcy." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). As such, it reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See id.* A finding of fact "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Rood*, No. DKC 12-1623, 2013 WL 55650, at *2 (D. Md. Jan. 2, 2013) (quoting *In re Fitzwater*, No. 11-934, 2012 WL 4339559, at *2 (S.D.W.V. Sept. 21, 2012)). "With respect to the bankruptcy court's application of law to the facts, the district court reviews for abuse of discretion." *Id.*

Here, Modanlo seeks to amend a judgment of this Court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See* Mot. for Recons. 1, ECF No. 34. A district court's power to grant or deny a Rule 59(e) motion is discretionary. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 411 (4th Cir. 2010). The rule provides that a court may alter or amend a judgment "if

---

[3] The appeal was initially assigned to Judge Peter J. Messitte. He recused himself in February 2018, at which point the case was reassigned to me. *See* ECF Nos. 19, 20.

4

the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Id.* at 407.

"A Rule 59(e) motion is not a vehicle for parties to recapitulate arguments considered by the Court before rendering its original decision." *IFCO Sys. N. Am., Inc. v. Am. Home Assurance Co.*, 797 F. Supp. 2d 660, 671 (D. Md. 2011). It is likewise not an opportunity "to raise arguments which could have been raised prior to the issuance of the judgment, nor . . . to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Where, however, the court has misapprehended the facts or arguments or is persuaded its judgment was plainly erroneous, the court may grant the motion. *See* Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary 234-35 (2018 ed.).

## DISCUSSION

Modanlo's Rule 59(e) motion purports to raise "four independent but related reasons" for amending the Court's judgment dismissing his appeal. Mot. for Recons. 1. Two of those assertions essentially attack the Court's interpretation of the 2004 settlement agreement. The first is that I erred in concluding Modanlo's objection to the special counsel's application was barred as an "adverse" action, as defined in Paragraph 3.a of the settlement agreement. *See* Suppl. Mot. 7-9, ECF No. 35. The second is that, even if "adverse," the objection was nevertheless permissible under other terms contained in the agreement. *See id.* at 9-11.

Modanlo's motion does not alter my view that he waived his right to contest counsel's application. Nevertheless, to clear up any possible misunderstandings, I will take a moment here to further detail my reasoning.

5

# 1.

Modanlo has raised a dispute over the interpretation of a contract, and so I start, as one must, with a recitation of the pertinent provisions. Paragraph 3, which bears the subject line, "Modanlo Group Objections & Further Participation in the Bankruptcy Proceedings," provides in relevant part:

> It is expressly acknowledged and understood that this settlement agreement will completely end any and all participation by the Modanlo Group and the Trustee against one another in the bankruptcy court and otherwise. To that end, upon final judicial approval of this Agreement each member of the Modanlo Group will withdraw all pending objections and shall agree to refrain from participating in any future FAI proceedings in any way adverse to the Estate or the Trustee including future objections to administrative fees. Notwithstanding the foregoing, the Modanlo Group will be permitted to take those actions directly related to seeking recovery of their proofs of claims including objecting to proofs of claims filed by other creditors as provided in Subsection 2 above.

Settlement Agreement ¶ 3.a.

This provision concludes with a reference to Paragraph 2, which outlines Modanlo's rights as a claimant. *See id.* ¶ 2. Relevantly, the paragraph states:

> Nothing in this Agreement shall limit in any way Mr. Modanlo's ability to contest proofs of claims filed by any creditor which activity will aid the Estate in its administration of claims adjudication; provided, (a) Mr. Modanlo shall acquire the prior written consent of the Trustee to object to such exemptions; or (b) the Trustee has confirmed that she intends to file no additional objections to claims prior to filing a report of proposed distribution; or (c) the Trustee has concluded objecting to claims; or (d) the Trustee's claims against [the law firm of Gardner Carton & Douglas LLP] have been finally adjudicated or settled."

*Id.* ¶ 2.

"Maryland law generally requires giving legal effect to the clear terms of a contract . . . ." *Calomiris v. Woods*, 727 A.2d 358, 362 (Md. 1999). Absent a determination that the contract's

language is ambiguous, the court must "restrict [its] inquiry to 'the four corners of the agreement'" and "give effect to that language as written without concern for the subjective intent of the parties at the time of formation." *Ocean Petroleum, Co., Yanek*, 5 A.3d 683, 690 (Md. 2010) (quoting *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007)).

"A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety . . . ." *Cochran v. Norkunas*, 919 A.2d at 710 (quoting *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964)). The court should not read disputed provisions in isolation, but should consider them "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and 'the facts and circumstances of the parties at the time of execution.'" *Ocean Petroleum*, 5 A.3d at 691 (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985)).

I read the 2004 settlement agreement's terms in light of its overall purpose, which, here, is specified in the recital. Settlement Agreement 1-2, ECF No. 25, Ex. 1. This portion of the agreement – written out as a series of "whereas" clauses – notes that Rose and Modanlo had been embroiled in several legal disputes between 2003 and 2004, both in the bankruptcy court and in separate litigation in state court. *See id.* The final "whereas" clause states: "[T]he parties desire to settle and compromise their disputes, obligations, claims, rights and liabilities, on the terms and conditions set forth herein in order to avoid the cost and disruption of further litigation." *Id.* at 2.

Two additional provisions elaborate on this statement. Paragraph 6 of the agreement provides: "It is acknowledged that this release is intended to completely resolve the disagreements between the Trustee and the Modanlo Group and to prevent further interaction that could give rise to future claims between them." *Id.* ¶ 6. Paragraph 11 adds: "It is expressly agreed that the parties make this Agreement to avoid the expense and disruption of litigation." *Id.* ¶ 11.

These provisions put Paragraphs 2 and 3 in context. They make clear that one of the agreement's core goals was to "prevent further interaction that could give rise to future claims" between Modanlo and Rose. *Id.* ¶ 6. Paragraph 3 advances this goal by expressly restricting Modanlo's opportunity to participate in the bankruptcy proceedings, subject to certain limited exceptions.

2.

This Court's Memorandum Opinion of July 2, 2018 observed that Offit Kurman, as special counsel for the trustee, "works for the benefit of the Estate and the Trustee." July 2018 Mem. Op. 7. Accordingly, "an action adverse to the Trustee's representative clearly also is an action adverse to the Trustee. Therefore in the Agreement, Modanlo waived his right to object to the administrative fee award or pursue this appeal." *Id.*

Modanlo, in his motion for reconsideration, argues that his objection to counsel's application for compensation was not "adverse" to either the estate or the trustee. He notes, first, that the Bankruptcy Code expressly permits a trustee to file a motion opposing the special counsel's request for compensation. Suppl. Mot. 8 n.2 (citing 11 U.S.C. § 330(a)(2)). More particularly, he suggests that allowing creditors to object to the special counsel's request might, in some cases, prove "consistent with, and supportive of, the Trustee's interests and fiduciary obligations" if it results in savings to the estate. *Id.* at 8.

I do not deny that a trustee and her attorney may disagree about the amount to which the attorney is entitled under § 330(a)(1). *See Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158, 2165 (2015). I nevertheless reject the suggestion that an objection to the attorney's fee request must fall outside the realm of "adverse" actions, as contemplated in Paragraph 3.a of the settlement agreement, merely because of the abstract possibility that the trustee might have objections of her

own (none of which were filed by *this* trustee with respect to the attorney's fees at issue in this motion). And I certainly do not agree that the parties could have reasonably intended to leave it up to Modanlo to decide when his proposed objection is or is not "adverse."

The overriding purpose of the settlement agreement, as I have already noted, was to quell the contentiousness surrounding the then-three-year-old bankruptcy proceedings and "avoid the cost and disruption of further litigation." Settlement Agreement 2. Paragraph 3 serves this end by expressly limiting Modanlo's "further participation" in the case. *Id.* ¶ 3. Specifically, it states, "each member of the Modanlo Group . . . shall agree to refrain from participating in any future FAI proceedings in any way adverse to the Estate or the Trustee including future objections to administrative fees." *Id.*

This provision is broadly worded. It restricts not merely Modanlo's *rights* in future FAI proceedings, but his very "*participation*" in them. *Id.* (emphasis added). It further emphasizes that Modanlo's participation cannot be adverse "*in any way*" to either the estate or the trustee. *Id.* (emphasis added).

Modanlo's motion speaks of adversity as though it were strictly a matter of dollars and cents, insisting his efforts cannot be adverse to anyone's interest (save for the law firm's) because of their potential to save the estate money. Surely, though, the interests of the various parties to a bankruptcy proceeding are not quite so straightforward.

There is no question, of course, that a trustee, in administering an estate, has an interest in minimizing its payouts. But the Code also obligates trustees to close the estate "as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1); *see In re Hutchinson*, 5 F.3d 750, 753-54 (4th Cir. 1993). This imperative requires the trustee to exercise her judgment as a fiduciary for the estate's creditors. *See In re Tubular Techs., LLC*, 372 B.R.

820, 823 (Bankr. D.S.C. 2007). The interested parties themselves – such as Modanlo, here – incur no such obligations. They are largely free to pursue their own self interest, in ways that may or may not align with the trustee's interests and duties.

Here, as it happens, the trustee did not take issue with the special counsel's final application for compensation. On the contrary, she sought to strike Modanlo's response in opposition to the application. *See* Mot. to Strike. Consequently, Modanlo's objection had precisely the effect the parties' settlement agreement sought to prevent: it ginned up a conflict that, sure enough, has embroiled the parties in further litigation.

### 3.

To better understand just what the parties meant by "adverse," one need only read to the end of the sentence. There, the parties specified that the adverse activities barred under the agreement include "future objections to administrative fees." The agreement does not define "administrative fees," and while the term does not appear in Chapter 7 of the Bankruptcy Code, courts have used the phrase to refer to the costs of administering an estate, sometimes including attorney's fees. *See, e.g., In re Home Loan Serv. Corp.*, 533 B.R. 302, 304 (Bankr. N.D. Cal. 2015) (including attorneys' fees in a tally of "Chapter 7 administrative fees"); *see also In re Holley*, 661 F. App'x 391, 396 (6th Cir. 2016); *In re Rodriguez*, 240 B.R. 912, 915 (Bankr. D. Colo. 1999).

Here, in seeking the bankruptcy court's authorization in 2001 to hire special counsel, the trustee expressly stated that one of counsel's core functions would be to assist her in matters "required for the orderly administration of this estate." ECF No. 34-1; *accord* ECF No. 4, Ex. 1. By the time Rose and Modanlo entered into the settlement agreement in 2004, the court had already approved (at least in part) the special counsel's first two applications for reimbursement. See ECF No. 4, Exs. 5, 13. Those applications reveal that Hoffman and his firm were actively collaborating

with Rose to administer the estate. This work included: helping Rose sell off assets; investigating potential claims on behalf of the estate against various entities; assisting in preparations for the meeting of creditors; examining FAI's assets; and working with Rose to "formalat[e] a plan for maximizing the value of the assets of the estate." First Application 4-5, ECF No. 4, Ex. 1.

Rose and Modanlo unquestionably were aware of the special counsel's work when they entered into the 2004 settlement agreement. They knew Hoffman's firm had been seeking compensation for its services, and they had every reason to assume it would continue to apply for compensation as the case proceeded. Given the settlement agreement's overarching purpose – which, again, was to head off future disputes and litigation costs – one has to conclude that the reference to "administrative fees" in Paragraph 3.a was meant to broadly encompass all reimbursable expenses associated with the administration of the estate, including the special counsel's fees.

### 4.

Modanlo argues, in the alternative, that even if his objection was "adverse" to the estate or trustee, it would still fall outside the scope of the waiver. He bases this contention on the very next sentence in Paragraph 3.a., which provides: "Notwithstanding the foregoing, the Modanlo Group will be permitted to take those actions directly related to seeking recovery of their proofs of claims including objecting to proofs of claims filed by other creditors as provided in Subsection 2 above." Settlement Agreement ¶ 3.a.

This sentence, along with Paragraph 2, makes clear that the settlement agreement did not entirely eliminate Modanlo's right to participate in the bankruptcy proceedings. Paragraph 2 expressly entitled Modanlo to retain a claim (while noting that any such claim would be "subordinated to the claims of the general unsecured creditors"). *Id.* ¶ 2. The paragraph then

preserved Modanlo's "ability to contest proofs of claims filed by any creditor which activity will aid the Estate in its administration of claims adjudication," subject to certain conditions. *Id.*

Mondalo notes that, at this time, he is "the only unpaid creditor with standing to recover any funds" from the estate. Suppl. Mot. 11. He argues, accordingly, that the special counsel's application for reimbursement jeopardized his own prospects of recovery, as it threatened to soak up whatever funds remained in the estate.

Modanlo's argument stresses the practical implications of the special counsel's request for compensation. But, of course, every dollar drawn from the estate for any purpose is a dollar the remaining claimants may no longer claim. If it were true that, under the settlement agreement, Modanlo could contest any action that threatened his subordinated claim, there would be nothing he could not contest. Modanlo would have carte blanche to file as many objections as he wished, and the waiver would be meaningless. *See Cochran*, 919 A.2d at 710 ("[I]f reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." (quoting *Sagner*, 198 A.2d at 283)).

The express terms of the agreement are not nearly so favorable to Modanlo. Rather, the agreement states that he may "take those actions *directly related to seeking recovery* of [his] proofs of claims." Settlement Agreement ¶ 3.a (emphasis added). This provision does not empower Modanlo to do battle with anyone seeking to draw money from the estate. It simply preserves his right to take those actions a claimant must take to seek recovery.

Modanlo's objection, I conclude, was not an action "directly related to seeking recovery of [his] proofs of claims." It therefore did not come within the exception to the broadly worded waiver in Paragraph 3.a.

**5.**

Modanlo's other two arguments do not merit as lengthy a discussion.

The first of these asserts that Offit Kurman lacks standing to enforce the settlement agreement. In making this argument, Modanlo cites Paragraph 13 of the Settlement Agreement, which states that only the parties, "their respective heirs, legal representatives, successors and assigns" may claim any right or benefit under the agreement. Settlement Agreement ¶ 13. Modanlo argues Offit Kurman is not the trustee's "legal representative" because the bankruptcy court's December 2001 order merely approved Hoffman as special counsel, not his current law firm.

"The primary source for determining whether the parties [to a contract] intended a third party to have standing to enforce the contractual provisions is the language of the contract itself." *Volcjak v. Washington Cty. Hosp. Ass'n*, 723 A.2d 463, 477 (Md. 1999). Here, the parties to the 2004 settlement agreement expressly conferred third-party standing on their "legal representatives." Settlement Agreement ¶ 13.

There is no question that Hoffman, at the very least, comes within this definition, as the bankruptcy court's December 2001 order expressly approved his appointment as special counsel for the trustee. *See* December 2001 Order. This is not an inconsequential point, seeing as Hoffman was the one who signed and submitted the motion to dismiss Modanlo's appeal. *See* Mot. to Dismiss 10, ECF No. 25.

It is true that the court's December 2001 order did not include express references to Hoffman's firm. But since that order was issued, more than 17 years ago, it has been evident that Hoffman was not working alone. Each and every one of the 10 applications he filed between 2001 and 2013 sought compensation not only on his own behalf, but on behalf of the firm with which

he was then associated. *See* ECF No. 4, Exs. 1, 6, 14, 37, 43, 49, 55, 68, 74, 79. The court approved each one – and in all cases identified the firm as special counsel. *See* ECF No. 4, Exs. 5, 13, 35, 42, 46, 54, 66, 72, 78, 83.

I rejected Modanlo's standing argument in my July 2018 memorandum opinion. *See* July 2018 Mem. Op. 8. Modanlo has not persuaded me that my ruling was in error.

The final argument in Modanlo's Rule 59(e) motion is similarly unavailing. There, Modanlo notes that the Court's July 2018 memorandum opinion "did not address [his] argument that the Bankruptcy Court's refusal to hold a hearing on the fee request despite [his] opposition" violated the notice and hearing requirements in 11 U.S.C. § 330(a)(1) and Rule 9014 of the Federal Rules of Bankruptcy Procedure. Suppl. Mot. 12. But this argument assumes Modanlo did not waive his right to contest the special counsel's application. I have held that he did, and I now decline to amend that ruling.

## CONCLUSION

Rose and Modanlo agreed to a settlement in 2004 for the express purpose of "prevent[ing] further interaction that could give rise to future claims between them." Settlement Agreement ¶ 6. This appeal is precisely the sort of dispute the agreement sought to avoid. Having thoroughly reviewed the agreement, it remains clear to me that Modanlo waived his right to object to the special counsel's application for compensation. Modanlo has not persuaded me that my previous ruling on this issue was in error, and so his Rule 59(e) motion is denied.

A separate order follows.

Date: March 20, 2019

Paul W. Grimm
United States District Judge